**BEACH v. BUSEY, Collector of Internal Revenue.**

**Civil Action No. 853.**

District Court, S. D. Ohio, E. D.

Aug. 28, 1945.

Warner M. Pomerene, of Coshocton, Ohio, and Mark A. Loofbourrow, of Cleveland, Ohio, for plaintiff.

Byron B. Harlan, U. S. Atty., of Dayton, Ohio, John M. Bowsher, Asst. U. S. Atty., of Columbus, Ohio, Samuel O. Clark, Jr., Asst. Atty. Gen., and Andrew D. Sharpe and James P. Garland, Sp. Assts. to Atty. Gen., for defendant.

UNDERWOOD, District Judge.

This suit is brought by the administrator of Harry L. Beach, deceased, to recover the sum of $18,655.70 paid by the administrator under an additional assessment of federal estate taxes. The question involved is the taxability of funds involved in two trusts which the Collector found to be taxable and which the plaintiff contends are not taxable. The case was tried to the Court without the intervention of a jury and it is now for determination on the merits.

The entire matter was submitted to the Court upon a "Statement of Fact and Stipulation Thereto," a copy of the federal estate tax return, and a copy of the decedent's will. No other evidence was offered, either oral or documentary.

For a detailed statement of facts, the Court relies upon and adopts the following:

Statement of Fact and Stipulation Thereto.

1. Defendant is and was at all times hereinafter mentioned, Collector of Internal Revenue for the 11th Ohio Collection District at Columbus, Ohio.

2. Plaintiff is and was at all times hereinafter mentioned a resident of Coshocton County, Ohio, and the duly appointed, qualified, and acting executor under the will of Harry L. Beach, who died on March 25, 1942, a resident of Coshocton County, Ohio and a citizen of the United States.

3. Plaintiff, as such executor, filed with the defendant Collector at Columbus, Ohio, in June of 1942, an estate tax return for the estate of Harry L. Beach, deceased, and paid to defendant Collector on or about June 24, 1942, the sum of $98,849.08, being the amount of tax called for by said return.

4. Plaintiff further paid to defendant on or about June 24, 1942, the additional sum of $10,906.04, representing a deficiency in estate tax which the Commissioner of Internal Revenue proposed to assess against plaintiff.

5. Plaintiff further paid to the defendant on or about June 24, 1943, under protest, the sum of $18,655.70, being a portion of a deficiency assessment of $24,748.48 which the Commissioner of Internal Revenue proposed to assess against plaintiff, and thereafter plaintiff filed with the Commissioner of Internal Revenue by filing with the defendant, a claim for refund, a copy of which (except for the signatures and seal which were attached to the original), marked "Exhibit C", is attached hereto and by reference made a part hereof as though fully rewritten herein.

6. Said deficiency assessment of $24,748.48 was subject to credit for State inheritance taxes paid to the extent of $6092.78, and this amount was paid to the State of Ohio and Florida by way of inheritance taxes, and evidence of such payment duly submitted to defendant so that the amount of said deficiency was reduced to $18,655.70, which sum, together with the estate tax on such additional administration expense as shall be incurred in the estate, is in controversy in this proceeding.

7. Said deficiency assessment represented the estate tax on the value of 80 per cent of the assets at date of decedent's death held pursuant to two certain trust agreements, which agreements marked respectively Exhibits "A" and "B" are attached hereto and by reference made a part hereof as though fully rewritten herein.

8. On or about December 14, 1943, defendant Collector, in writing, rejected said claim for refund in its entirety.

9. On March 2, 1925, Harry L. Beach and his wife, Elizabeth C. Beach, as Settlors, delivered $100,000 in United States Bonds payable to bearer, to the Huntington National Bank of Columbus, Ohio, and entered into a trust agreement of even date therewith by the terms of which said Bank agreed to hold said bonds upon the terms and conditions set forth in said trust agreement. (This is the trust agreement attached hereto and marked "Exhibit A.")

10. On January 23, 1926, Harry L. Beach and his wife, Elizabeth C. Beach, as Settlors, delivered $100,000 in United States Bonds payable to bearer, to the Commercial National Bank of Coshocton, Ohio, and entered into a trust agreement of even date therewith by the terms of which said Bank agreed to hold said bonds upon the terms and conditions set forth in said trust agreement. (This is the trust agreement attached hereto and marked "Exhibit B.").

11. In each case Harry L. Beach contributed $80,000 face value of U. S. Bonds and Elizabeth C. Beach contributed $20,000.

12. Harry L. Beach died on March 25, 1942.

13. The Commissioner of Internal Revenue assessed Federal estate tax on the remainder value of the two trust estates after the death of Elizabeth C. Beach, to the extent of the 80 per cent interest contributed by Harry L. Beach.

14. At the time the first trust was created on March 2, 1925, Harry L. Beach had three children and two grandchildren living; and when the second trust was created in January, 1926, he had three children and three grandchildren living. The following list shows the names, relationship, and date of birth of decedent's lineal descendants surviving him:

James W. Beach—born Feb. 4, 1895—Son

Henry Beach—born Oct. 3, 1921—Grandchild

James Beach—born June 3, 1925—Grandchild

Mary Elizabeth Beach—born Jan. 11, 1930—Grandchild

Nelle Beach (Lynde) Branson—born Jan. 3, 1898—Daughter

Elizabeth Lynde—born June 11, 1923—Grandchild

Camilla Beach—born August 26, 1900—Daughter

15. At the time of his death Harry L. Beach was survived by his widow, Elizabeth C. Beach, his three children, and his four grandchildren, as above set forth.

16. Camilla Beach was an invalid, unable to support or care for herself.

17. At the time the first trust was created, Harry L. Beach, was 55 years of age. At the time the second trust was created he was 56 years of age.

### Stipulation.

"It is hereby stipulated and agreed by the parties plaintiff and defendant in this action, for the purposes of this case only, by their respective counsel that the facts stated in the foregoing statement consisting of four pages and exhibits therein referred to are true and correct and that said statement and exhibits should be filed and used as agreed evidence, in the case, but each party hereby reserves the right to introduce further evidence on the trial of the case if it so desires to add to or supplement the facts set forth in said statement."

### "Exhibit A"
### Agreement.

"This Agreement made, executed and delivered this 2nd day of March, 1925, at Columbus, Ohio, by and between Harry L. Beach and Elizabeth C. Beach, Husband and Wife, of Coshocton, Ohio, hereinafter called 'The Settlors' and the Huntington Bank of Columbus, Ohio, hereinafter called 'The Trustee', Witnesseth:

"The Settlors hereby assign, transfer and set over unto said Trustee and its successors in trust, the following described United States Bonds, of a total par value of One Hundred Thousand ($100,000.00) Dollars (all being coupon bonds):

United States Trasury 4% Bonds, dated December 15th, 1924, and maturing 1944–1954:

| No. | | | denomination | |
|---|---|---|---|---|
| D | 00007144 | .... denomination | $10,000.00 | |
| E | 00007145 | .... " | 10,000.00 | |
| B | 00007142 | .... " | 10,000.00 | |
| C | 00007143 | .... " | 10,000.00 | |
| J | 00044489 | .... " | 10,000.00 | |
| K | 00044490 | .... " | 10,000.00 | |
| A | 00044491 | .... " | 10,000.00 | |
| J | 00007549 | .... " | 10,000.00 | |
| K | 00007550 | .... " | 10,000.00 | $ 90,000.00 |

United States Treasury 4¼% Bond, dated October 16th, 1922, and maturing 1947–1952:
No. E 00044485 .....denomination $10,000.00     10,000.00

Total Par Value........................... $100,000.00

"Eighty Thousand ($80,000.00) Dollars of said bonds are the property of the Settlor Harry L. Beach, and Twenty Thousand ($20,000.00) Dollars of said bonds are the property of the Settlor Elizabeth C. Beach.

"To have and to hold unto said Trustee and its successors in trust for the uses and purposes as follows:

"1. To collect the income arising therefrom and from such income, to pay all taxes, assessments, costs and expenses incident to this trust, and thereafter from the net annual income to pay:

"(A). To the Settlor, Elizabeth C. Beach, during the life of the Settlor Harry L. Beach, the net annual income from said trust fund.

"(B). Upon the death of the Settlor Harry L. Beach, said Trustee shall pay said net annual income jointly to the Settlor Elizabeth C. Beach and Camilla Beach during their joint lives, and upon the death of either, then the Trustee shall pay said net annual income to the survivor of the said Elizabeth C. Beach and Camilla Beach during the remainder of the life of such survivor.

"(C). Payments of the net annual income to the Cestui que trust hereunder shall be made semi-annually or oftener at the discretion of the Trustee.

"(D). The Cestui que trust hereunder shall have the right to receive the entire net annual income or should the Cestui que trust so desire, the Cestui que trust entitled to receive the income from said trust may withdraw from such annual income only so much thereof as said Cestui que trust may desire and may permit the remainder of said net annual income to be retained by the Trustee under the provisions of Item (5) hereof.

"2. This trust shall terminate upon the death of the last survivor of the Settlor, Elizabeth C. Beach and the daughter of said Settlors, Camilla Beach, and upon the termination of this Trust, said trust fund, together with any accumulations thereto, shall be distributed according to the Statutes of descent and distribution of the State of Ohio, to the heirs at law of Harry L. Beach, and Elizabeth C. Beach, providing the heirs of both Harry L. Beach and Elizabeth C. Beach are the same persons.

"Should the said Harry L. Beach and Elizabeth C. Beach leave no lineal descendants of their direct line, and the next of

kin of each were collateral heirs, then said trust fund shall upon the termination of this trust be distributed eighty (80%) per cent to said collateral heirs at law of Harry L. Beach, and twenty (20%) per cent to the said collateral heirs at law of Elizabeth C. Beach.

"3. In the distribution of the income from said trust fund, the Trustee is hereby authorized to pay such of the income as may be distributable hereunder to Camilla Beach directly without the intervention of any Guardian or order of any Court, and the receipt of the said Camilla Beach shall be a sufficient voucher for the Trustee.

"4. In the event that the net annual income from this trust fund is insufficient to provide for the care, support and maintenance of Elizabeth C. Beach and/or Camilla Beach, including all of the comforts and luxuries of life to which they have been accustomed, then the Trustee hereunder may make advances to either or both said Elizabeth C. Beach, and/or Camilla Beach from the principal hereof for the support, care, maintenance, comforts and luxuries required by said Cestui que trust.

"5. That portion of the income from this trust fund if any, received by the Trustee hereunder from the property now or hereafter placed in trust as well as any accumulations thereto appertaining, and not used by the Trustee in the payment of taxes, expenses or payments to the Cestui que trust in any one year, shall be retained by the Trustee and invested, and shall be considered as income which may be drawn upon at any time in any subsequent year for the benefit of said Cestui que trust until the termination of this trust, but nothing herein contained shall limit the right of the said Elizabeth C. Beach and/or Camilla Beach to withdraw in accordance with the terms of this Trust the entire net income together with any accumulations, should she or they so desire.

"6. In the investment and reinvestment of the Trust estate, said Trustee shall, during the life of the Settlor, Harry L. Beach, consult with him as to all investments and reinvestments, and shall be guided by his advices and directions in such matters.

"After the death of the said Harry L. Beach, and during the remaining life of this Trust, said Trustee shall confine its investments for said fund to such securities as are approved by the Statutes of the State of Ohio, for the investment by Guardians or Trustees of the funds of minors as provided by the General Code of Ohio.

"7. Any and all stock dividends, if any, received on any property hereafter becoming a part of this trust fund shall be treated as principal and added to the trust fund so far as permitted by law, after the deduction of all taxes and charges properly payable with respect thereto.

"8. In the administration of this Trust, the Trustee hereunder is hereby authorized to sell and dispose of any and all securities, investments and other property, real or personal, belonging to the Trust fund herein created, without the order of any Court, and said sale may be either public or private, and on terms or for cash as said Trustee in its judgment may think best. Provided however, that during the life of Harry L. Beach, no such sale or disposal shall be made of any of said property belonging to said trust fund without the express consent and approval of the said Harry L. Beach.

"9. Said Trustee is further authorized and empowered to execute and deliver all necessary assignments and transfers for the transfer of corporate stocks and all bonds and other personal property, and all deeds of conveyance for real estate, should the trust fund acquire real estate, so sold and disposed of, without the order of any Court, hereby relieving the purchaser from all liability in regard to the proper application of the purchase price so paid to said Trustee.

"10. The Trust hereunder created shall be deemed an Ohio·Trust, and shall in all respects be governed by the laws of the State of Ohio.

"11. The Settlors, or either of them, reserve the right to place additional securities or property, real or personal under the terms of this agreement, and in the event other securities or property is placed hereunder, such securities and property and the proceeds derived therefrom are to be considered and treated as a portion of the original trust estate hereby created.

"12. It is expressly understood and agreed that this Trust is not revocable by any action of the Settlors hereunder, all of the Settlor's rights as to said property having terminated upon the execution of this agreement, except as provided herein.

"13. The Trustee shall keep true and accurate records and books of account, which shall be open to the inspection of the

Settlors, and after his death to any beneficiary then entitled to receive payment of income or principal by the terms of this agreement, and the Trustee hereunder shall make yearly reports to the Settlors during their lives, and to Camilla Beach during her life, should she survive the Settlors.

"14. The term Trustee as used hereunder shall be construed as meaning The Huntington National Bank of Columbus, Ohio, or should said Bank change its corporate name or dispose of its trust business to or become consolidated with any other corporation having trust powers under the laws of the State of Ohio, or The United States, then such successor corporation shall automatically become the successor Trustee.

"15. (A). The Trustee hereunder shall out of the Trust estate be paid reasonable compensation, not exceeding three (3%) per cent of the annual income handled by the Trustee and arising from the property described on page one hereof.

"(B). Upon the distribution of the principal of said trust fund upon the termination of this Trust fund, the Trustee shall be paid in addition to the annual compensation provided above, one (1%) per cent of the amount so distributed or in the event of a distribution of securities, then one (1%) per cent of the market value of such securities so to be distributed.

· "(C). Should other property be from time to time added to this Trust fund, the compensation of the Trustee with respect to such additional property shall be agreed upon at the time said property is added to this trust fund.

"(D). The Trustee hereunder shall also be paid from the trust fund all costs, expenses, and attorneys' fees incurred by the Trustee for the benefit of the trust estate.

"16. William R. Pomerene of Columbus and Warner M. Pomerene of Coshocton are the attorneys hereunder for the Settlors and in legal matters pertaining to this trust fund, the Trustee hereunder shall advise and consult with said attorneys.

"17. This Agreement shall be binding upon the heirs, Executors, Administrators, Successors and Assigns of the parties hereto.

"18. The Trustee hereunder accepts said Trust and agrees to carry out the provisions hereof on its part, and further acknowledges the receipt of the bonds described on page one hereof.

"In witness whereof, The Settlors have hereunto set their hands, and the Trustee has caused these presents to be executed by its duly authorized officers, and the corporate seal to be hereto affixed, all in duplicate, this 2nd day of March, 1925.

"(Harry L. Beach)
"(Elizabeth C. Beach)
    Settlors.
"THE HUNTINGTON NATIONAL BANK of Columbus, Ohio, The Trustee,
"By (T. S. Huntington) Vice President.

"Attest
    B. Wellman
        Secretary

"Witnesses:
"(Warner M. Pomerene).
"E. R. Sharp
"(Corporate Seal)"

"Exhibit B"
Agreement

"This agreement made, executed and delivered this 23rd day of January, 1926, at Coshocton, Ohio, by and between Harry L. Beach, and Elizabeth C. Beach, husband and wife, of Coshocton, Ohio, hereinafter called 'The Settlors' and The Commercial National Bank of Coshocton, Ohio, hereinafter called 'The Trustee,' Witnesseth:

"The Settlors hereby assign, transfer and set over unto said Trustee and its successors in trust, the following described United States Bonds:

"Eighty Thousand Dollars ($80,000.00) U. S. Treasury 4% Coupon Bonds, dated December 15th, 1924 and maturing 1944–1954.

"Twenty Thousand Dollars ($20,000.00) U. S. Treasury 4½% Coupon Bonds, dated October 16th, 1922, and maturing 1947–1952.

"The total par value of the U. S. Government Bonds constituting this Trust is One Hundred Thousand Dollars ($100,000.00).

"Eighty Thousand Dollars ($80,000.00) of said bonds are the property of the Settlor Harry L. Beach, and Twenty Thousand ($20,000.00) Dollars of said bonds are the property of the Settlor Elizabeth C. Beach.

"To have and to hold unto said Trustee and its successors in trust for the uses and purposes as follows:

"1. To collect the income arising therefrom and from such income, to pay all taxes, assessments, costs and expenses incident to this trust, and thereafter from the net annual income to pay:

"(A). To the Settlor, Elizabeth C. Beach, during the life of the Settlor Harry L. Beach, the net annual income from said trust fund.

"(B). Upon the death of the Settlor Harry L. Beach, said Trustee shall pay said net annual income jointly to the Settlor Elizabeth C. Beach and Camilla Beach during their joint lives, and upon the death of either, then the Trustee shall pay said net annual income to the survivor of the said Elizabeth C. Beach and Camilla Beach during the remainder of the life of such survivor.

"(C). Payments of the net annual income to the Cestui que trust hereunder shall be made semi-annually or oftener at the discretion of the Trustee.

"(D). The Cestui que trust hereunder shall have the right to receive the entire net annual income or should the Cestui que trust so desire, the Cestui que trust entitled to receive the income from said trust may withdraw from such annual income only so much thereof as said Cestui que trust may desire and may permit the remainder of said net annual income to be retained by the Trustee under the provisions of Item Five (5) hereof.

"2. This trust shall terminate upon the death of the last survivor of the Settlor, Elizabeth C. Beach and the daughter of said Settlors, Camilla Beach, and upon termination of this Trust said trust fund, together with any accumulations thereto, shall be distributed according to the Statutes of descent and distribution of the State of Ohio, to the heirs at law of Harry L. Beach and Elizabeth C. Beach, providing the heirs of both Harry L. Beach and Elizabeth C. Beach are the same persons.

"Should the said Harry L. Beach and Elizabeth C. Beach leave no lineal descendants of their direct line, and the next of kin of each were collateral heirs, then said trust fund shall upon the termination of this trust be distributed eighty (80%) per cent to said collateral heirs at law of Harry L. Beach, and twenty (20%) per cent to the said collateral heirs at law of Elizabeth C. Beach.

"3. In the distribution of the income from said trust fund, the Trustee is hereby authorized to pay such of the income as may be distributable hereunder to Camilla Beach directly without the intervention of any Guardian or order of any Court, and the receipt of the said Camilla Beach shall be a sufficient voucher for the Trustee.

"4. In the event that the net annual income from this trust fund is insufficient to provide for the care, support and maintenance of Elizabeth C. Beach and/or Camilla Beach, including all of the comforts and luxuries of life to which they have been accustomed, then the Trustee hereunder may make advances to either or both said Elizabeth C. Beach and/or Camilla Beach from the principal hereof for the support, care, maintenance, comforts and luxuries required by said Cestui que trust.

"5. That portion of the income from this trust fund, if any, received by the Trustee hereunder from the property now or hereafter placed in trust as well as any accumulations thereto appertaining, and not used by the Trustee in the payment of taxes, expenses or payments to the Cestui que trust in any one year, shall be retained by the Trustee and invested, and shall be considered as income which may be drawn upon at any time in any subsequent year for the benefit of said Cestui que trust until the termination of this trust, but nothing herein contained shall limit the right of the said Elizabeth C. Beach and/or Camilla Beach to withdraw in accordance with the terms of this Trust the entire net income together with any accumulations, should she or they so desire.

"6. In the investment and reinvestment of the Trust estate, said Trustee shall, during the life of the Settlor, Harry L. Beach, consult with him as to all investments and reinvestments, and shall be guided by his advices and directions in such matters.

"After the death of said Harry L. Beach, and during the remaining life of this trust, said Trustee shall confine its investments for said fund to such securities as are approved by the Statutes of the State of Ohio, for the investment by Guardians or Trustees of the funds of minors as provided by the General Code of Ohio.

"7. Any and all stock dividends, if any, received on any property hereafter be-

226

coming a part of this trust fund shall be treated as principal and added to the trust fund so far as permitted by law, after the deduction of all taxes and charges properly payable with respect thereto.

"8. In the administration of this Trust, the Trustee hereunder is hereby authorized to sell and dispose of any and all securities, investments and other property, real or personal, belonging to the Trust fund herein created, without the order of any Court, and said sale may be either public or private, and on terms or for cash as said Trustee in its judgment may think best. Provided, however, that during the life of Harry L. Beach, no such sale or disposal shall be made of any of said property belonging to said trust fund without the express consent and approval of said Harry L. Beach.

"9. Said Trustee is further authorized and empowered to execute and deliver all necessary assignments and transfers for the transfer of corporate stocks and all bonds and other personal property, and all deeds of conveyance for said real estate, should the trust fund acquire real estate, so sold and disposed of, without the order of any Court, hereby relieving the purchaser from all liability in regard to the proper application of the purchase price so paid to said Trustee.

"10. The Trust hereunder created shall be deemed an Ohio Trust, and shall in all respects be governed by the laws of the State of Ohio.

"11. The Settlors, or either of them, reserve the right to place additional securities or property, real or personal under the terms of this agreement, and in the event other securities or property is placed hereunder, such securities and property and the proceeds derived therefrom are to be considered and treated as a portion of the original trust estate hereby created.

"12. It is expressly understood and agreed that this Trust is not revocable by any action of the Settlors hereunder, all of the Settlor's rights as to said property having terminated upon the execution of this agreement, except as provided herein.

"13. The Trustee shall keep true and accurate records and books of account, which shall be open to the inspection of the Settlors, and after his death to any beneficiary then entitled to receive payment of income or principal by the terms of this agreement, and the Trustee hereunder shall make yearly reports to the Settlors during their lives, and to Camilla Beach during her life, should she survive the Settlors.

"14. The term Trustee as used hereunder shall be construed as meaning The Commercial National Bank of Coshocton, Ohio, or should said Bank change its corporate name or dispose of its trust business to or become consolidated with the other corporation having trust powers under the laws of the State of Ohio, or The United States, then such successor corporation shall automatically become the successor Trustee.

"15. (A). The Trustee hereunder shall out of the Trust estate be paid reasonable compensation, not exceeding three (3%) per cent of the annual income handled by the Trustee and arising from the property described on page one hereof.

"(B). Upon the distribution of the principal of said trust fund upon the termination of this Trust fund, the Trustee shall be paid in addition to the annual compensation provided above, one (1%) per cent of the amount so distributed or in the event of a distribution of securities, then one (1%) per cent of the market value of such securities so to be distributed.

"(C). Should other property be from time to time added to this Trust fund, the compensation of the Trustee with respect to such additional property shall be agreed upon at the time said property is added to this trust fund.

"(D). The Trustee hereunder shall also be paid from the trust fund all costs, expenses and attorneys' fees incurred by the Trustee for the benefit of the trust estate.

"16. William R. Pomerene of Columbus and Warner M. Pomerene of Coshocton are the attorneys hereunder for the Settlors and in legal matters pertaining to this trust fund, the Trustee hereunder shall advise and consult with said attorneys.

"17. This Agreement shall be binding upon the heirs, Executors, Administrators, Successors and Assigns of the parties hereto.

"18. The Trustee hereunder accepts said Trust and agrees to carry out the provisions hereon on its part, and further acknowledges the receipt of the bonds described on page one hereof.

"In witness whereof, The Settlors have hereunto set their hands, and the Trustee has caused these presents to be executed by its duly authorized officers, and the cor·

porate seal to be hereto affixed, all in duplicate, this 23rd day of January, 1926.

"(H. L. Beach)
"(Elizabeth C. Beach)
Settlors.
"THE COMMERCIAL NATIONAL BANK, of Coshocton, Ohio, The Trustee,
"By (Geo. W. Cassingham)
President
"(C. H. Magruder)
Trust Officer.

"Witnesses:
"(Helyn R. Henderson)
"(C. R. Speckman)
"(Corporate Seal)"

In connection therewith, the Court makes the following findings of fact and conclusions of law:

### Findings of Fact.

I. Harry L. Beach, decedent herein, died testate a resident of Coshocton County, Ohio, on March 25, 1942. Plaintiff, as executor of decedent's estate, filed with the defendant at Columbus, Ohio, a federal estate tax return evidencing a federal estate tax due of $98,849.08, which amount together with additional tax of $10,906.04 was paid to defendant on or about June 24, 1942. An additional assessment of federal estate taxes in the amount of $18,655.70 was paid by plaintiff as executor to the defendant on or about June 24, 1943. A claim for refund was timely filed in the amount of $18,655.70.

II. The taxes sought to be recovered in this action arose from the inclusion by the Commissioner of Internal Revenue of 80% of the value, as of the date of decedent's death, of two trusts established by decedent and his wife, Elizabeth C. Beach, on March 2, 1925, and January 23, 1926. The portion of the trusts included in decedent's taxable estate represented his contributions thereto. The balance of the trust property, or 20% thereof, was contributed by Elizabeth C. Beach. Decedent contributed approximately $80,000 to each of the two trusts. The value of the trusts is not in controversy.

III. The relevant provisions of the two trust agreements are substantially the same. All of the income from the trusts was to be paid to Elizabeth C. Beach during the lifetime of this decedent. Upon his death the income was to be paid in equal shares to Elizabeth C. Beach and to their daughter Camilla Beach and the entire income to the survivor for life. Both trust agreements contained the following pertinent provisions (Stip. Ex. A, p. 2):

"This trust shall terminate upon the death of the last survivor of the Settlor, Elizabeth C. Beach and the daughter of said Settlors, Camilla Beach, and upon the termination of this Trust said trust fund, together with any accumulations thereto, shall be distributed according to the Statutes of descent and distribution of the State of Ohio, to the heirs at law of Harry L. Beach and Elizabeth C. Beach, providing the heirs of both Harry L. Beach and Elizabeth C. Beach are the same persons.

"Should the said Harry L. Beach and Elizabeth C. Beach leave no lineal descendants of their direct line, and the next of kin of each were collateral heirs, then said trust fund shall upon the termination of this trust be distributed eighty (80%) per cent to said collateral heirs at law of Harry L. Beach, and twenty (20%) per cent to the same collateral heirs at law of Elizabeth C. Beach."

IV. At the time the first trust was created on March 2, 1925, Harry L. Beach had three children and two grandchildren living; and when the second trust was created in January, 1926, he had three children and three grandchildren living. The following list shows the name, relationship and date of birth of decedent's lineal descendants surviving him:

James W. Beach, born February 4, 1895, son.

Henry Beach, born October 3, 1921, grandchild.

James Beach, born June 3, 1925, grandchild.

Mary Elizabeth Beach, born January 11, 1930, grandchild.

Nelle Beach (Lynde) Branson, born January 3, 1898, daughter.

Elizabeth Lynde, born June 11, 1923, grandchild.

Camilla Beach, born August 26, 1900, daughter.

At the time of his death Harry L. Beach was survived by his widow, Elizabeth C. Beach, his three children, and his four grandchildren as above set forth. Camilla Beach was an invalid, unable to support or care for herself. At the time the first trust was created, Harry L. Beach was 55

228

years of age. At the time the second trust was created he was 56 years of age.

V. The record in this case consists of a stipulation of facts, a copy of the federal estate tax return and a copy of decedent's will. There was no oral or other documentary evidence offered.

### Conclusions of Law.

I. If decedent had survived his wife and daughter Camilla, the life beneficiaries of the trusts here concerned, 80% of the trust property, representing decedent's contribution to the trusts and representing the portion of the property taxed in decedent's estate, would have reverted to him free of the trusts. Such was decedent's intention.

II. The possibility that the corpora taxed would revert to the decedent was not remote.

III. A reversionary interest or possibility of reverter in the decedent by operation of law makes the value of the trust includable in decedent's taxable estate under Section 811 (c) of the Internal Revenue Code, 26 U.S.C.A. Int.Rev.Code, § 811 (c).

IV. The value of the property transferred by decedent in trust in 1925, and in 1926, is includable in decedent's taxable estate as transfers intended to take effect in possession or enjoyment at or after decedent's death within the meaning of Section 811 (c) of the Internal Revenue Code, 26 U.S.C.A. Int.Rev.Code, § 811 (c).

V. Defendant is entitled to judgment.